IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STEVEN GREEN, | : | PRISONER HABEAS CORPUS |
| GDC # 1230344, | : | 28 U.S.C. § 2254 |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| AIMEE SMITH, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:20-CV-2603-SDG-JEM |

**FINAL REPORT AND RECOMMENDATION**

Petitioner, Steven Green, represented by counsel, submitted a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his Gwinnett County convictions. (Doc. 1.) Petitioner also submitted a brief in support. (Doc. 1-1.) Respondent filed an answer-response (Doc. 9), brief in support (Doc. 9-1), and exhibits (Docs. 10, 11). Petitioner filed a reply. (Doc. 12.) For the reasons stated below, the undersigned **RECOMMENDS** that the petition be **DENIED** and this action be **DISMISSED**.

I.      **BACKGROUND**

The Georgia Supreme Court summarized the facts of Petitioner's criminal case as follows:

> On the evening of October 1, 2011, [Shyrome] Marshall returned to his apartment; he had with him his baby boy and his friend, [Anthony Shane] Augustus. Marshall carried his infant son to the apartment while Augustus retrieved items from the car in which they arrived. Marshall observed that there were no lights on in his apartment, which was unusual, and when he reached the

apartment door, he saw that it had been "busted open." Marshall
entered and immediately was struck 15 or 16 times by a pistol; the
assault was "brutal." The assailant put the pistol to the back of
Marshall's head, forced him to his knees with his hands in the air,
and told him, "you know what to do, just give me the god-damn
money." As Augustus was heard entering the apartment, Marshall
took advantage of the distraction, reached for the pistol, and
managed to "flip over" his assailant, whose face he plainly saw and
whose voice he recognized as [Petitioner's]. He knew [Petitioner]
from having been "locked up together." Marshall managed to
break free and rushed to his neighbor's apartment for help.
Augustus was shot in the lower abdomen. [Petitioner] and [co-
defendant Isaac Vincente] Sandoval fled Marshall's apartment. The
fatally wounded Augustus managed to walk out of the apartment,
and get the attention of a neighbor before he collapsed. Augustus
died as the result of a gunshot wound to the right inguinal area
that transected his right femoral artery.

*Green v. State*, 295 Ga. 108, 109 (2014). On July 21, 2012, a jury convicted

Petitioner of malice murder, burglary, aggravated assault, possession of a

firearm during the commission of a felony, and possession of a firearm by a

convicted felon. *Id.* at 108-09 & n.1. Petitioner was sentenced to life

imprisonment plus 20 years, followed by 40 years of probation. *Id.* at 109 n.1.

Petitioner presented the following claims in his first direct appeal:

> 1. "[T]he trial court erred in overruling [Petitioner's] post-trial
>    claim that he was denied a fair trial due to a juror's
>    untruthful responses during voir dire."
>
> 2. Trial counsel provided ineffective assistance.

*Id.* at 110-12. On April 22, 2014, the Georgia Supreme Court affirmed as to the first claim and remanded as to the second claim. *Id.* at 108-09. After the trial court rejected the claim of ineffective assistance of trial counsel, Petitioner presented the following claims in his second direct appeal:

> Trial counsel provided ineffective assistance by
>
> 1. "fail[ing] to move the court to declare a mistrial, or to strike the questions and answers regarding [witness John] Manning from the record based upon that failure,"
>
> 2. failing to object when the trial court found Marshall in criminal contempt but did not allow the finding to be used to impeach his testimony, and
>
> 3. having a conflict of interest by representing Petitioner's girlfriend, Rachael Anderson, regarding felony drug charges.

*Green v. State*, 299 Ga. 337, 338-44 (2016). The Georgia Supreme Court affirmed on July 5, 2016. *Id.* at 337. In his state habeas proceeding, which commenced on June 9, 2017, Petitioner presented the following grounds for relief:

> 1. Trial counsel "failed to investigate and call witnesses or obtain cell tower information related to mapping out the alleged location of Petitioner in relation to the crime scene," violating his rights to effective assistance, due process, and a fair trial.
>
> 2. "[E]vidence of cell tower information related to allegations of Petitioner's presence at the crime scene area was introduced for demonstrative evidence purposes, and the trial court judge did not allow the information to be given to the jury after it was requested," violating Petitioner's rights to effective assistance, due process, and a fair trial.

3

3. Trial counsel provided ineffective assistance by failing to

(a) "file a motion in limine to limit the testimony of Crystal Wallace to relevant facts within the time frame of the alleged events,"

(b) "present a proper photograph of Petitioner at the time of the crime," and

(c) "object to the use of a photograph of Petitioner from seven years earlier."

4. Trial counsel provided ineffective assistance by failing to "impeach Shyrome Marshall, who had multiple prior felonies and perjured himself at trial by failing to admit to these facts and that Petitioner and Mr. Marshall had been in prison together before."

5. Trial counsel failed to "object to hearsay testimony from witnesses at trial about what Petitioner said to someone else who was unavailable to testify," violating Petitioner's rights to effective assistance and confrontation of witnesses against him.

6. Trial counsel failed to "impeach a witness and agreed to not mention prior felony charges pending against the witness without Petitioner's consent," violating his rights to effective assistance, due process, and confrontation of witnesses against him.

7. Trial counsel failed to disclose "a conflict of interest in his representation of Petitioner in that he also represented a witness at trial on a separate criminal matter, which affected his judgment and representation of Petitioner," violating his rights to effective assistance, due process, and a fair trial.

8. Trial counsel failed to "investigate jurors or to ask voir dire questions that would have and should have shown that a juror was on felony probation," and the juror committed

misconduct, violating Petitioner's rights to effective assistance and due process.

9. Trial counsel provided ineffective assistance by failing to "call experts at trial that could have testified to questions related to cell phone detection issues."

10. Appellate counsel failed to "properly present several constitutional violations that occurred at the first motion for new trial and appeal or at the second motion for new trial and appeal," namely, instances of trial counsel's ineffectiveness, violating Petitioner's rights to effective assistance, due process, and a fair trial.

11. "[T]he grounds and issues set forth above 'create a cumulative effect on the constitutional protections afforded Petitioner and signify individual and collective violations of those rights.'"

12. "[T]he trial court committed plain error in failing to allow defense counsel to question the jurors regarding how many questions during a critical witness's testimony that jurors missed."

13. Appellate counsel provided ineffective assistance by failing to raise trial counsel's ineffectiveness in failing to "object to the trial court's ruling denying his request to question the jurors regarding how many questions during a critical witness's testimony that they missed."

14. Appellate counsel provided ineffective assistance by failing to raise "the trial court's alleged error in permitting the State's speculation during closing arguments."

15. Appellate counsel provided ineffective assistance by failing to raise trial counsel's ineffectiveness in failing to "object to the State's speculation during closing arguments."

16. (a) Trial counsel provided ineffective assistance by failing to "object to the trial court's failure to give a foreseeability instruction."

(b) Appellate counsel provided ineffective assistance by failing to raise trial counsel's ineffectiveness.

17. (a) Trial counsel provided ineffective assistance by failing to "object to the trial court's and the State's alleged errors in equating reasonable doubt with the truth and improperly quantifying reasonable doubt."

(b) Appellate counsel provided ineffective assistance by failing to raise trial counsel's ineffectiveness.

18. Petitioner's "sentence amounts to cruel and unusual punishment."

19. (a) Trial counsel provided ineffective assistance by failing to "raise the trial court's alleged error in admitting similar transaction evidence."

(b) Appellate counsel provided ineffective assistance by failing to raise the same issue.

20. Appellate counsel provided ineffective assistance by failing to raise "the motion for new trial court's failure to act as the thirteenth juror."

(Doc. 10-3 at 2-6.) The state habeas court denied relief in a final order filed on May 17, 2019. (*Id.* at 1.) The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on February 28, 2020. (Doc. 10-5.) The Georgia Supreme Court issued its remittitur on May 6, 2020. (Doc. 10-6.)

6

Petitioner filed his § 2254 petition on June 19, 2020. (Doc. 1 at 9.)
Respondent does not dispute that Petitioner timely submitted this action under
28 U.S.C. § 2244(d). Petitioner raises the following grounds for relief:

1. (a) Trial counsel failed to "impeach the State's main witness with
his prior conviction," violating Petitioner's rights to effective
assistance and due process.
(b) The "[t]rial court committed plain error in failing to ensure the
jury heard critical testimony, despite being aware that this
was an issue."

2. (a) Trial counsel provided ineffective assistance by failing to
object "to the court's failure to determine what the jury
missed, and refusal to allow counsel to do so."
(b) Appellate counsel provided ineffective assistance by failing to
raise this issue.

3. (a) Trial counsel provided ineffective assistance by failing to
"request a foreseeability instruction."
(b) Appellate counsel provided ineffective assistance by failing to
raise this issue.

4. "Petitioner was denied his right to a fair trial because of juror
dishonesty during voir dire."

5. Trial counsel provided ineffective assistance by failing to
"preserve the objection to the trial court's refusal to allow
Petitioner to impeach the State's key witness."

6. Trial counsel provided ineffective assistance by failing to
(a) "object to the incorrect reasonable doubt analogy," and
(b) "call an expert to prove that Petitioner was not present."

(*Id.* at 6, 13.) The undersigned first considers the grounds that were adjudicated on the merits, followed by the grounds that are procedurally defaulted.

## II.    GROUNDS ADJUDICATED ON THE MERITS

A federal court may not grant habeas relief with respect to a claim previously adjudicated on the merits in state court proceedings unless the adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The "clearly established Federal law" identified in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412. As to § 2254(d)(2), "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the

petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding . . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Having reviewed the parties' filings and the record of the state court proceedings, the undersigned determines that an evidentiary hearing is not required for disposition of this case. *See* 28 U.S.C. § 2254(e)(2); 28 U.S.C. foll. § 2254, Rule 8(a).

### A.   Ineffective Assistance of Counsel

The clearly established federal law that applies to claims of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Smith v. Robbins*, 528 U.S. 259, 285-89 (2000) (applying *Strickland* to claims of ineffective assistance of appellate counsel). To demonstrate ineffective assistance of counsel, a convicted defendant must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. As to the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). As to the second prong, "[t]he defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court may consider either prong first and need not address the other "if the defendant makes an insufficient showing on one." *Id.* at 697.

> The standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations and internal quotation marks omitted).

In ground two(b), Petitioner claims that appellate counsel provided ineffective assistance by failing to raise trial counsel's ineffectiveness in failing to object "to the court's failure to determine what the jury missed, and refusal to allow counsel to do so." (Doc. 1 at 6.) This ground concerns whether the jury had trouble hearing the cross-examination of Laurie Lane, an intelligence analyst for the Georgia Bureau of Investigation ("GBI"), concerning the location of Petitioner's cell phone. At the state habeas hearing, appellate counsel testified that he considered the issue but did not raise it "because it was never fleshed

out at trial," such as by "voir diring the 12 jurors" as to whether they heard the entire cross-examination. (Doc. 10-3 at 14-15.) The state habeas court found that (1) "[t]he trial transcript does not indicate that jurors were unable to hear any of Ms. Lane's testimony," and (2) the trial court informed counsel that (a) the jurors "sometimes . . . h[ad] a hard time hearing [counsel]," and (b) he "needed to stay close to the microphones when speaking or speak louder when away from the microphones." (*Id.* at 15.) The state habeas court determined that (1) appellate counsel "did not have a record that reflected that the jurors did not hear any of Ms. Lane's testimony," and (2) "[i]t would have been entirely speculative . . . as to whether the jurors were completely unable to hear trial counsel's questioning of the witness." (*Id.* at 15-16.) The state habeas court concluded that Petitioner (1) "failed to show that appellate counsel's actions likely fell below an objective standard of reasonableness," and (2) "cannot show that [Petitioner] suffered prejudice as a result of counsel's alleged ineffective assistance." (*Id.* at 16.)

The undersigned concludes that the state habeas court's decision is (1) neither contrary to, nor an unreasonable application of, *Strickland* and *Smith*, and (2) not based on an unreasonable determination of the facts. Appellate counsel in a criminal case does not have a duty to raise every nonfrivolous issue requested by the client. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Id.* at 752. As the state habeas court found, the record indicated that

the jury did not have any trouble hearing Lane. Instead, the record shows that the jury sometimes had trouble hearing only trial counsel. Given the record's silence when it came to Lane's testimony, it was not a promising issue on appeal because the record allowed appellate counsel only to speculate regarding what the jury heard with respect to her. Therefore, Petitioner fails to (1) overcome the strong presumption in *Strickland* and *Smith* favoring appellate counsel, and (2) show a reasonable probability of a different outcome if appellate counsel had raised trial counsel's alleged ineffectiveness in failing to object when the court did not determine or allow counsel to determine whether the jury heard the entire cross-examination of Lane.

In ground three(b), Petitioner claims that appellate counsel provided ineffective assistance by failing to raise trial counsel's ineffectiveness in failing to "request a foreseeability instruction." (Doc. 1 at 6.) At the state habeas hearing, Petitioner's counsel asked whether appellate counsel "recall[ed] the jury asking questions regarding the party to the crime theory in mere presence after instruction?" (Doc. 10-3 at 18.) Appellate counsel testified that he "recall[ed] that jury question" but did not "recall having any thought in [his] mind that [trial counsel] should have" requested a foreseeability instruction. (*Id.*) The state habeas court found that (1) the trial court gave pattern jury charges on "the law regarding party to the crime, mere presence, and mere association," (2) the combination of charges "adequately cover the issue of reasonable foreseeability," and (3) "[a]n additional charge of reasonable foreseeability, given on its own, was unwarranted in Petitioner's case." (*Id.*) The

state habeas court concluded that Petitioner "failed to show that appellate counsel's actions likely fell below an objective standard of reasonableness." (*Id.* at 18-19.)

The undersigned concludes that the state habeas court's decision is (1) neither contrary to, nor an unreasonable application of, *Strickland* and *Smith*, and (2) not based on an unreasonable determination of the facts. The state habeas court found that the combination of charges on party to the crime, mere presence, and mere association sufficiently address the issue of reasonable foreseeability. Respondent also points out that the trial court correctly noted that "there is no pattern jury instruction on foreseeability in Georgia." (Doc. 9-1 at 16, 19.) Therefore, trial counsel's alleged ineffectiveness in failing to request a foreseeability instruction was not a promising issue on appeal. Petitioner fails to (1) overcome the strong presumption in *Strickland* and *Smith* favoring appellate counsel, and (2) show a reasonable probability of a different outcome if appellate counsel had raised trial counsel's alleged ineffectiveness.

In ground five, Petitioner claims that trial counsel provided ineffective assistance by failing to "preserve the objection to the trial court's refusal to allow Petitioner to impeach the State's key witness." (Doc. 1 at 13.) The Georgia Supreme Court explained that State's witness Marshall testified that he was not a drug dealer. *Green*, 299 Ga. at 339. The trial court excused the jury, questioned Marshall regarding his testimony, found him in criminal contempt, and ordered him to serve 20 days in jail. *Id.* "After two other witnesses testified, trial counsel asked the court whether the court's finding of criminal contempt could be used

13

to impeach Marshall's testimony." *Id.* at 339-40. The trial court "responded that it would not be appropriate" because it "would potentially interfere with the jury's independent determination of Marshall's credibility." *Id.* at 340.

The Georgia Supreme Court determined that the trial court was correct because O.C.G.A. § 17-8-57 provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." *Id.* at 341. "For the trial court to allow the jury to be informed that it had found Marshall to have testified falsely would have directly violated this principle." *Id.* The Georgia Supreme Court concluded that "it was not ineffective assistance to fail to make any objection on this ground." *Id.*

The undersigned concludes that the Georgia Supreme Court's decision is (1) neither contrary to, nor an unreasonable application of, *Strickland*, and (2) not based on an unreasonable determination of the facts. As the court determined, it would have been fruitless in light of O.C.G.A. § 17-8-57 for trial counsel to object to the judge's refusal to allow Petitioner to use the criminal contempt finding to impeach Marshall. Petitioner fails to (1) overcome the strong presumption in *Strickland* favoring trial counsel, and (2) show a reasonable probability of a different outcome.

In ground six(b), Petitioner claims that trial counsel provided ineffective assistance by failing to "call an expert to prove that Petitioner was not present." (Doc. 1 at 13.) This ground concerns the location of Petitioner's cell phone. The state habeas court explained that trial counsel cross-examined Michael S.

14

Dikovitsky, an employee of a cell phone company, who testified that Petitioner "could have only been in Sector 1, where the crime occurred, for a matter of approximately three minutes and twenty-nine seconds while this crime was supposedly taking place." (Doc. 10-3 at 12-13.) That testimony was the same as "Petitioner's habeas corpus counsel presented at the evidentiary hearing through [an] expert witness, Paul Steffes." (*Id.* at 13.) "Next, trial counsel cross-examined Laurie Lane, the GBI intelligence analyst, about the same cell phone data," and she testified that "Petitioner would have only been in Sector 1 for three minutes and twenty-nine seconds." (*Id.*) During closing, trial counsel argued that Petitioner's time in Sector 1 "would not have allowed for him to drive to the crime scene, commit the crime, and drive back to a location in Sector 3." (*Id.*) "Trial counsel also argued that based off the State's witnesses' testimony, it was possible that Petitioner was in between two sectors, within the overlap, which could have resulted in the records showing Petitioner was in Sector 1 for the period of time that he was." (*Id.*)

The state habeas court determined that "[t]hrough his cross-examinations, trial counsel was able to get the State's witnesses to testify that Petitioner would have only had about three minutes and twenty-nine seconds to commit the crime based on the cell phone data for his phone." (*Id.* at 13-14.) The court also found that Petitioner's habeas expert witness "Mr. Steffes would not have provided any additional useful information that was not already established through trial counsel's cross-examinations of Mr. Dikovitsky and Ms. Lane." (*Id.* at 14.) The court further noted that (1) "the State had a dual

15

theory at trial that either Petitioner committed the crime himself with the co-defendant or that he was a party to the crime by helping and planning in the perpetration of the crime," (2) "[t]he jury did not have to believe that Petitioner actually committed the crime to convict him in this case," and (3) "[t]ext messages showed Petitioner could have been found to have been involved in the planning of the crime, which would have been sufficient to allow for the jury to convict Petitioner as a party to the crime." (*Id.*) The court concluded that "[t]rial counsel was not ineffective for failing to call a defense expert to testify on Petitioner's behalf concerning the cell phone records in this case." (*Id.* at 13.)

The undersigned concludes that the state habeas court's decision is (1) neither contrary to, nor an unreasonable application of, *Strickland*, and (2) not based on an unreasonable determination of the facts. As the court determined, trial counsel's cross-examinations of State's witnesses Dikovitsky and Lane elicited the same testimony as Petitioner's habeas expert witness Steffes. Furthermore, Petitioner could have been convicted as a party to the crime based on his text messages. Petitioner fails to (1) overcome the strong presumption in *Strickland* favoring trial counsel, and (2) show a reasonable probability of a different outcome if trial counsel had called an expert on cell phone data.

Accordingly, the undersigned **RECOMMENDS** that Petitioner be **DENIED** habeas corpus relief as to the following grounds: two(b); three(b); five; and six(b).

**B.**     **Juror Dishonesty**

In ground four, Petitioner claims that he "was denied his right to a fair trial because of juror dishonesty during voir dire." (Doc. 1 at 6.) The following clearly established federal law applies to Petitioner's claim:

> [T]o obtain a new trial . . . , a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 556 (1984).

The Georgia Supreme Court explained that a juror who served on Petitioner's case failed to disclose (1) an arrest "in Gwinnett County in 2010 for kidnapping, aggravated sexual battery, and aggravated sodomy," and (2) "a guilty plea [in February 2012] to false imprisonment and terroristic threats and [a sentence] to fifteen years [of] probation under the First Offender Act." *Green*, 295 Ga. at 110-11. The juror "was released from custody in February 2012, approximately five months prior to serving on [Petitioner's] jury." *Id.* at 111. The juror and Petitioner "were incarcerated in the same Gwinnett County Detention Center pod from November 2011 to February 2012," but the juror "testified that he did not know [Petitioner], did not recall being incarcerated with him, did not consider the incarceration while deliberating on [Petitioner's] case, and did not share with the other jurors any information gleaned from that incarceration." *Id.* The juror "also testified that his verdicts were based only on

17

the evidence presented at trial." *Id.* Petitioner "testified that he did not recognize [the juror] during the trial of his case, and that only after trial did he learn of [the juror's] service on his case." *Id.*

The Georgia Supreme Court summarized the trial court's conclusions that (1) the juror "did not act with partiality or manifest injustice toward [Petitioner] in rendering his verdict," (2) although the juror failed "to appropriately respond during voir dire, he acted properly in his service as a juror on [Petitioner's] case," (3) "there was no showing that [the juror] had an 'evil motive' or that he acted with other than the required impartiality," (4) "there was no indication that [the juror] did anything during jury deliberations which was unfair or evidenced that [the juror] had any ulterior motives in failing to give truthful and accurate responses during voir dire," (5) "there was no evidence indicating that [the juror] shared inadmissible evidence with the other jurors," and (6) "another juror testified that [the juror at issue] did not share any such information." *Id.*

The Georgia Supreme Court determined that Petitioner failed to demonstrate that (1) "correct responses by the [j]uror would have provided a valid basis for a challenge for cause," and (2) the "juror's knowledge of, or non-familial relationship with [Petitioner] . . . resulted in the juror having a fixed opinion of [Petitioner's] guilt or innocence or a bias for or against [him]." *Id.* at 111-12. The court concluded that Petitioner "was not entitled to a new trial based upon his juror challenge." *Id.* at 112.

18

The undersigned concludes that the Georgia Supreme Court's decision is (1) neither contrary to, nor an unreasonable application of, *McDonough*, and (2) not based on an unreasonable determination of the facts. Despite the juror's failure to disclose his arrest, guilty plea, and sentence, he did not know Petitioner, did not remember being incarcerated with him, did not consider the incarceration when deliberating, and did not tell the other jurors about it. The juror testified that he based his verdicts only on the evidence presented at trial. Petitioner fails to show that the juror was not impartial or that there was a valid basis for a challenge for cause.

Accordingly, the undersigned **RECOMMENDS** that Petitioner be **DENIED** habeas corpus relief as to ground four.

### III.   PROCEDURALLY DEFAULTED GROUNDS

"Federal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief." *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir. 1996). However,

> [a] federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation. . . . To show cause, the petitioner must demonstrate some objective factor external to the defense that impeded his effort to raise the claim properly in state court. . . . [I]f the petitioner fails to show cause, [the court] need not proceed to the issue of prejudice. . . . [T]o show prejudice, a petitioner must demonstrate

19

> that the errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness.

*Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (citations and internal quotation marks omitted). "[I]neffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "[A] claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 452 (internal quotation marks omitted).

Alternatively, the petitioner may obtain federal habeas review of a procedurally defaulted claim if he presents "proof of actual innocence, not just legal innocence." *Ward*, 592 F.3d at 1157 (citation omitted). To demonstrate actual innocence, the petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Under Georgia law, "a failure to make timely objection to any alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus." *Black v. Hardin*, 255 Ga. 239, 239 (1985); *see also* O.C.G.A. § 9-14-48(d) (providing that "habeas corpus relief shall not be granted" when petitioner fails to make "timely motion or objection or otherwise compl[y] with Georgia procedural rules at trial and on appeal").

20

The state habeas court determined that the following grounds are procedurally defaulted because Petitioner neither complied with Georgia procedural rules nor established cause and prejudice to overcome the default: one(a) and (b); two(a); three(a); and six(a). (Doc. 9-1 at 7-10; Doc. 10-3 at 8-9.) Because the state habeas court rested its decision on an independent and adequate procedural bar, Petitioner cannot obtain federal habeas review of those grounds. *See Hill*, 81 F.3d at 1022. Petitioner neither (1) shows cause for the default and prejudice, nor (2) presents proof of actual innocence.

Accordingly, the undersigned **RECOMMENDS** that Petitioner be **DENIED** habeas corpus relief as to the following grounds: one(a) and (b); two(a); three(a); and six(a).

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement

21

to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (citing *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

The undersigned **RECOMMENDS** that a certificate of appealability be **DENIED** because the resolution of the issues presented is not debatable. If the District Court adopts this recommendation and denies a certificate of appealability, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2254, Rule 11(a).

## V.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that (1) the § 2254 petition (Doc. 1) be **DENIED**, (2) a certificate of appealability be **DENIED**, and (3) this action be **DISMISSED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**SO RECOMMENDED**, this 28th day of September, 2022.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE